# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES LAMAR HENDERSON,

                Petitioner,

v.

SCOTT ECKSTEIN,

                Respondent.

Case No. 17-CV-849-JPS

**ORDER**

## 1. INTRODUCTION

Petitioner James Lamar Henderson ("Henderson") filed a petition for a writ of *habeas corpus* on June 19, 2017. (Docket #1). Magistrate Judge William E. Duffin screened Henderson's petition on July 27, 2017 and determined that Henderson's petition could proceed. (Docket #6). On September 22, 2017, Respondent[1] moved to dismiss some of the grounds for relief identified in Henderson's petition. (Docket #10). The motion is now fully briefed. (Response, Docket #13; Reply, Docket #14). For the reasons explained below, Respondent's motion must be granted.

## 2. BACKGROUND

The two opinions produced by the Wisconsin Court of Appeals in Henderson's state court litigation together provide the relevant background to the instant case. On June 3, 2015, on direct appeal, the Court of Appeals summarized Henderson's crimes and arguments:

> James Lamar Henderson appeals his judgment of conviction for attempted first-degree intentional homicide,

---

[1] Scott Eckstein has replaced Brian Foster as the warden of Green Bay Correctional Institution, where Henderson is currently housed. The case caption has been modified accordingly.

first-degree recklessly endangering safety, and first-degree reckless injury, all by use of a dangerous weapon, and three counts of misdemeanor bail jumping. He also appeals the circuit court's denial of his postconviction motion for a new trial, alleging that his trial counsel was ineffective for not moving to sever the bail jumping counts from the felony charges and for not advising him to testify. We affirm.

  Henderson was alleged in a criminal complaint and information to have committed two counts of attempted first-degree intentional homicide, one count of first-degree reckless injury, and one count of first-degree reckless endangerment, all by use of a dangerous weapon, in connection with a shooting outside the American Legion Club in Racine. Henderson was also charged with four counts of misdemeanor bail jumping as at the time of the shooting, Henderson was released on bond pending trial on the condition that he not commit any crimes.

  At trial, S.M. testified that he and his fianceé, B.S., were leaving the American Legion on New Year's Eve when a man called out a greeting to B.S. S.M confronted the man and was approaching him when shots rang out. S.M. was hit five times. B.S. identified the man as Henderson and said she saw Henderson leaning over a car door with a gun at the time of the shooting.

  An off-duty police officer working at the club testified that he witnessed a small, green Honda leaving the scene of the shooting at a high rate of speed. The vehicle was traced to Devlon Driggers and was located near a rooming house where Driggers and Henderson resided in separate rooms. During a search of Henderson's room, police found a nine-millimeter Kel–Tec semiautomatic handgun. A crime lab examiner linked a bullet removed from S.M.'s arm to the handgun.

  Driggers, who was granted "use immunity" by the State, testified that he drove alone on New Year's Eve to the American Legion, where he met Henderson. He testified that they hung out, danced, and played pool before deciding to leave together. They were in Driggers' car, listening to music in the parking lot, when Driggers said that Henderson saw a woman that he knew and spoke to her. Driggers testified that

he saw Henderson fire his gun when a man started rushing toward the car.

Some of Driggers' testimony was contradicted by a video from the club that showed he and Henderson arriving together and by a statement that Driggers gave police that he did not see Henderson with a gun until after he got back into the car. Additionally, both S.M. and Driggers testified that they each had numerous criminal convictions—S.M., eight, and Driggers, nine. The lead investigator into the shooting also testified that Henderson initially lied to police, claiming that he had been home at the time of the shooting.

A jury convicted Henderson of attempted first-degree intentional homicide, first-degree recklessly endangering safety, and first-degree reckless injury, all by use of a dangerous weapon, and three counts of misdemeanor bail jumping. Postconviction, Henderson sought to vacate his conviction on the ground that his trial counsel was ineffective for not seeking to sever the bail jumping counts from the rest of the charges and for not advising him to testify. At the *Machner* hearing, Henderson's trial counsel conceded that he should have moved for severance, but that he was "not sure it would have been granted." Counsel also testified that he told Henderson that it was his choice whether to testify and that Henderson "indicated from the first time I met him, basically, that he was not going to testify." Henderson stated at the hearing that his trial counsel had told him he could not testify because he "would be eaten alive in the courtroom."

The court determined that even if counsel performed deficiently in not moving to sever the charges, Henderson was not prejudiced. The court also found that although Henderson might have been warned by counsel about the consequences of testifying, it was ultimately Henderson's decision to not testify at trial. Accordingly, the court denied the motion. Henderson appeals.

*State of Wisconsin v. Henderson*, 2014-AP-1175, 2015 WL 3476691, at *1-2 (Wis. Ct. App. 2015). The court affirmed Henderson's conviction because any supposed error by his trial counsel visited no prejudice upon him. *Id.* at *2-

3. The court further held that Henderson himself chose not to testify, and in any event failed to demonstrate that his testimony would have a reasonable probability of changing the outcome of the trial. *Id.* at *3.

On March 15, 2017, the Court of Appeals addressed Henderson's post-conviction motion filed pursuant to Wis. Stat. § 974.06:

> James Lamar Henderson appeals pro se from an order denying his motion for postconviction relief. He contends that the circuit court erroneously admitted hearsay testimony in violation of his constitutional right to confrontation. He further contends that his trial counsel was ineffective. Finally, he contends that he is entitled to a new trial in the interest of justice. We reject Henderson's arguments and affirm.
> . . .
> [At Henderson's trial,] the jury heard from Sergeant Terrance Jones of the Racine Police Department. Sergeant Jones testified that on December 31, 2011, he was off-duty, working security at the American Legion in Racine. Shortly after midnight, his partner, Officer Robert Thillemann, entered the building and said that there was a report of a shooting outside. Sergeant Jones and Officer Thillemann headed outside to investigate.
>
> Sergeant Jones testified that as he was heading outside, he talked to a woman who refused to give her name. When the prosecutor asked Sergeant Jones what the unidentified woman said to him, defense counsel objected on grounds of hearsay and the right to confrontation. After a brief voir dire of Sergeant Jones outside the presence of the jury, the circuit court overruled the objection. The court determined that the woman's statements were admissible as present sense impressions and did not raise a confrontation issue.
>
> Sergeant Jones went on to describe two conversations that he had with the unidentified woman. In the first conversation, he asked whether she saw anyone shooting a gun. The woman said that she saw a man firing one in the back of the parking lot. This caused Sergeant Jones to investigate the back of the parking lot where he discovered the shooting victims.

> After talking to the shooting victims, Sergeant Jones spoke again with the unidentified woman. In this second conversation, the woman described the gunman. At that point in time, Sergeant Jones did not know whether the gunman was still in the area.
>
> On the basis of this and other evidence, the jury convicted Henderson of one count of attempted first-degree intentional homicide with use of a dangerous weapon, one count of first-degree recklessly endangering safety with use of a dangerous weapon (this charge had been amended from attempted first-degree intentional homicide with use of a dangerous weapon), one count of first-degree reckless injury with use of a dangerous weapon, and three counts of misdemeanor bail jumping.
>
> Henderson filed a postconviction motion accusing his trial counsel of ineffective assistance for not moving to sever the bail jumping counts from the felony charges and for not advising him to testify. The circuit court denied the motion following a *Machner* hearing. Henderson appealed, and this court affirmed the judgment of conviction and circuit court order denying the postconviction motion. *State v. Henderson*, No. 2014AP1175-CR, unpublished slip op. (WI App June 3, 2015).
>
> In December 2015, Henderson filed another motion for postconviction relief pursuant to Wis. Stat. § 974.06 (2015-16). The circuit court denied the motion without a hearing. This appeal follows.
>
> On appeal, Henderson first contends that the circuit court erroneously admitted hearsay testimony in violation of his constitutional right to confrontation. His argument centers on the unidentified woman's statements as recounted in Sergeant Jones' testimony.

*State of Wisconsin v. Henderson* [*Henderson II*], 2016-AP-159, 2017 WL 1026237, at *1-2 (Wis. Ct. App. 2017). The court affirmed the denial of Henderson's motion because the woman's statements fell within Wisconsin's hearsay exception for present sense impressions. *Id.* at *2. The court also held that Henderson's right to confrontation was not violated

because the statements were nontestimonial. *Id.* Finally, the court denied Henderson's additional claims of ineffective assistance of trial counsel because they were both forfeited, as Henderson failed to raise them on direct appeal, and were meritless in any event.

Henderson's habeas petition presents four grounds for relief. First, he claims that he was denied a fair trial because the bail jumping charges were jointly tried with the underlying charges, and this resulted in prejudice ("Ground One"). (Docket #1 at 6-7). Second, he alleges that his trial counsel was ineffective for failing to challenge the joinder issue or otherwise "present[] [a] legally sufficient defense" ("Ground Two") *Id.* at 7-8. Third, Henderson maintains that the trial court abused its discretion in admitting alleged hearsay statements from the unidentified woman ("Ground Three"). *Id.* at 8. Finally, he contends that his Sixth Amendment right to confront witnesses against him was violated by admitting the woman's statements ("Ground Four"). *Id.* at 9.

## 3. STANDARD OF REVIEW

The federal habeas corpus statute "permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). "As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Id.* As a result, the Court may grant a writ of habeas corpus only if the state court's decision with respect to that claim was: (1) "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2); *see also Conner v. McBride*, 375 F.3d 643, 648-49 (7th Cir. 2004).

4. **ANALYSIS**

Respondent moves to dismiss Grounds One, Two, and Three of Henderson's petition, conceding that Ground Four should proceed to a review on its merits. (Docket #10 at 2). Henderson admits that Grounds One and Two raise issues of state law which are not cognizable in a federal habeas proceeding. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[W]e have repeatedly held that federal habeas corpus relief does not lie for errors of state law. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quotations, citations, and alterations omitted). Those grounds will, therefore, stand dismissed.

Respondent also argues that Ground Three presents questions of state, not federal, law. (Docket #11 at 17-18). Henderson opposes dismissal of this ground, asserting that it "goes beyond a state law issue." (Docket #13 at 8). He says that under the Federal Rules of Evidence, the unidentified woman's statement was hearsay. *Id.* at 9-10. Henderson further contends that the statements fall outside both the present sense impression and excited utterance exceptions because she did not personally observe the events she related to Sergeant Jones. *Id.* at 11-12. Respondent replies, correctly, that the Federal Rules of Evidence, and precedent interpreting them, are not binding on Wisconsin courts. *See* Fed. R. Evid. 101 ("These rules apply to proceedings in United States courts."). Wisconsin has its own rules of evidence and those were applied in Henderson's case. *Henderson II*, 2017 WL 1026237, at *2.

Henderson's only citation in support of his position is *Idaho v. Wright*, 497 U.S. 805 (1990), which he says permits this Court to "consider whether hearsay evidence violated a petitioner's right to confrontation, and whether it was admissible under present sense or excited utterance." (Docket #13 at 12). Henderson is correct in his first assertion. *Wright* addresses the intersection of hearsay and the Sixth Amendment's Confrontation Clause. *Wright*, 497 U.S. at 813-25. *Wright* did not, however, have anything to say on the second assertion; it did not hold that a federal habeas court should apply the Federal Rules of Evidence, including those concerning hearsay and its exceptions, to determine whether a state court correctly admitted or excluded evidence in a state criminal proceeding. In other words, in the instant case, "[t]he court's role . . . is not to decide the narrow issue of whether the challenged statements were admissible under Wisconsin law. Rather, [it] ask[s] if the admission of the testimony violated [Henderson's] Sixth Amendment right to confrontation." *Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991). This is the very issue which will be addressed by Ground Four, which Respondent does not seek to dismiss at this time.

5. **CONCLUSION**

For the reasons stated above, Respondent's motion to dismiss must be granted. In the same motion, Respondent requests that the Court set a new briefing schedule to address Ground Four. (Docket #10 at 2). This request will be granted, and the merits of Ground Four will be briefed in line with the schedule detailed below.

Accordingly,

**IT IS ORDERED** that Respondent Scott Eckstein's motion to dismiss (Docket #10) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Grounds One, Two, and Three of Petitioner James Lamar Henderson's petition for a writ of *habeas corpus* (Docket #1 at 6-8) be and the same are hereby **DISMISSED**; and

**IT IS FURTHER ORDERED** that the parties shall file briefs on the merits of the sole remaining ground, Ground Four, in accordance with the following schedule:

1. The respondent shall file an answer to the petition within 30 days from the date of this order.

2. The petitioner shall have 60 days after the filing of the respondent's answer within which to file a brief in support of his petition, providing reasons why the writ of habeas corpus should be issued. The petitioner is reminded that, in accordance with 28 U.S.C. § 2248, unless he disputes allegations made by the respondent in his answer or motion to dismiss, those allegations "shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."

3. The respondent shall file an opposition brief, with reasons why the writ of habeas corpus should not be issued, within 60 days of service of petitioner's brief, or within 120 days from the date of this order if no brief is filed by petitioner.

4. The petitioner may then file a reply brief, if he wishes to do so, within 30 days after the respondent has filed a response brief.

Pursuant to Civil L. R. 7(f), the following page limitations apply: briefs in support of or in opposition to the habeas petition must not exceed thirty pages and reply briefs must not exceed fifteen pages, not counting any caption, cover page, table of contents, table of authorities, and/or signature block.

Dated at Milwaukee, Wisconsin, this 23rd day of October, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge