# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES LAMAR HENDERSON,

                     Petitioner,

v.

WARDEN SCOTT ECKSTEIN,

                     Respondent.

Case No. 17-CV-849-JPS

**ORDER**

## 1. INTRODUCTION

On January 11, 2013, a jury in the Racine County Circuit Court found Petitioner James Lamar Henderson ("Henderson") guilty of attempted murder and other charges related to an incident where Henderson fired a gun at two people and hit one of them. (Docket #1 at 2). On February 15, 2013, Henderson was sentenced to over fifty years' imprisonment. *Id.* He filed a direct appeal and a later post-conviction motion in the Wisconsin courts, both of which were denied at each stage of review. *Id.* at 3-6. Henderson filed the instant petition for a writ of *habeas corpus* on June 19, 2017. As explained further below, the Court previously dismissed three of the four grounds for relief Henderson's petition presents. (Docket #15). As to the final ground, Henderson filed a brief in support on November 29, 2017. (Docket #17). Respondent submitted his brief in opposition on January 22, 2018. (Docket #18). Henderson filed a reply on February 26, 2018. (Docket #19).[1] For the reasons explained below, Henderson's petition must be denied.

---

[1]Henderson's reply is technically late, as he was required to file it no later than February 21, but it was not received by the Court until February 26. (Docket

## 2.  BACKGROUND

Though the underlying criminal proceedings have produced multiple opinions from the Wisconsin Court of Appeals, the only relevant decision was issued on March 15, 2017. *State of Wisconsin v. Henderson*, 2016-AP-159, 2017 WL 1026237 (Wis. Ct. App. 2017). There, the court addressed Henderson's post-conviction motion filed pursuant to Wis. Stat. § 974.06. *Id.* at \*1. The court aptly summarized the operative facts:

> James Lamar Henderson appeals pro se from an order denying his motion for postconviction relief. He contends that the circuit court erroneously admitted hearsay testimony in violation of his constitutional right to confrontation. He further contends that his trial counsel was ineffective. Finally, he contends that he is entitled to a new trial in the interest of justice. We reject Henderson's arguments and affirm.

> In January 2012, the State filed a criminal complaint charging Henderson with two counts of attempted first-degree intentional homicide with use of a dangerous weapon, one count of first-degree reckless injury with use of a dangerous weapon, one count of first-degree reckless endangerment with use of a dangerous weapon, and four related counts of misdemeanor bail jumping. The charges stemmed from an incident at a New Year's Eve party in which Henderson shot a firearm at two individuals, striking one with several bullets.

> The matter proceeded to trial. There, the jury heard from Sergeant Terrance Jones of the Racine Police Department. Sergeant Jones testified that on December 31, 2011, he was off-duty, working security at the American Legion in Racine. Shortly after midnight, his partner, Officer Robert Thillemann, entered the building and said that there was a report of a shooting outside. Sergeant Jones and Officer Thillemann headed outside to investigate.

---

#15 at 9). The Court will excuse the slight tardiness in this instance, as it does not change the result.

Sergeant Jones testified that as he was heading outside, he talked to a woman who refused to give her name. When the prosecutor asked Sergeant Jones what the unidentified woman said to him, defense counsel objected on grounds of hearsay and the right to confrontation. After a brief voir dire of Sergeant Jones outside the presence of the jury, the circuit court overruled the objection. The court determined that the woman's statements were admissible as present sense impressions and did not raise a confrontation issue.

Sergeant Jones went on to describe two conversations that he had with the unidentified woman. In the first conversation, he asked whether she saw anyone shooting a gun. The woman said that she saw a man firing one in the back of the parking lot. This caused Sergeant Jones to investigate the back of the parking lot where he discovered the shooting victims.

After talking to the shooting victims, Sergeant Jones spoke again with the unidentified woman. In this second conversation, the woman described the gunman. At that point in time, Sergeant Jones did not know whether the gunman was still in the area.

On the basis of this and other evidence, the jury convicted Henderson of one count of attempted first-degree intentional homicide with use of a dangerous weapon, one count of first-degree recklessly endangering safety with use of a dangerous weapon (this charge had been amended from attempted first-degree intentional homicide with use of a dangerous weapon), one count of first-degree reckless injury with use of a dangerous weapon, and three counts of misdemeanor bail jumping.

*Id.* The court affirmed the denial of Henderson's post-conviction motion in all respects. *Id.* at *2-3.

Henderson's habeas petition initially presented four grounds for relief. The first three were dismissed upon Respondent's motion, as they were issues of state law beyond review in a federal habeas proceeding.

(Docket #15). Henderson's fourth and final ground for relief is that his Sixth Amendment right to confront witnesses against him was violated by admitting the unidentified woman's statements. (Docket #1 at 9).

### 3.    LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal

habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

4.      ANALYSIS

The Confrontation Clause of the Sixth Amendment protects the right of criminal defendants "to be confronted with the witnesses against [them]." U.S. Const. Amend. VI. The Supreme Court interprets this provision as barring the use of testimonial out-of-court statements unless

the declarant is unavailable for trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Confrontation Clause applies with equal force in both state and federal prosecutions. *Id.* at 42; *Michigan v. Bryant*, 562 U.S. 344, 352 (2011).

Critically, the right of confrontation applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 821. Testimonial statements are the equivalent of a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (quotation omitted). In a criminal case, this is typically found when "[a]n accuser . . . makes a formal statement to government officers." *Id.* Non-testimonial statements do not implicate the Confrontation Clause, and a defendant's rights with respect to such statements are adequately protected by traditional hearsay rules. *Davis*, 547 U.S. at 821. *Davis* provided a basic test for differentiating between the two kinds of statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. Determining the character of a statement requires an "objective[] evaluat[ion] [of] the circumstances in which the encounter occurs and the statements and actions of the parties." *Bryant*, 562 U.S. at 359.

The Wisconsin Court of Appeals rejected Henderson's claim of a Confrontation Clause violation. *Henderson*, 2017 WL 1026237, at *2. It cited

*Davis* for the proposition that only testimonial statements are subject to confrontation. *Id.* Couching its holding in the *Davis* test, the court found that the woman's statements "were nontestimonial because the primary purpose of Sergeant Jones' questioning was to meet an ongoing emergency." *Id.*

The questions before this Court are whether the Wisconsin Court of Appeals' decision was contrary to Supreme Court Confrontation Clause precedent, and whether it unreasonably applied such precedent. *Brown*, 544 U.S. at 141. As to the first question, the Wisconsin Court of Appeals appropriately identified *Davis* and its controlling test for the testimonial nature of a statement.

As to the second question, this Court cannot say that the Wisconsin Court of Appeals was wrong, much less that it acted unreasonably. *Bryant* held that a statement to police was non-testimonial when the victim, twenty-five minutes after the shooting, identified his assailant and stated that the attack had occurred in a different location. *Bryant*, 562 U.S. at 349-50. The police had asked him about what had happened, who had shot him, and where. *Id.* at 349. The Court held that there was no indication that the emergency had ended, as the shooter was still on the loose and it was not clear whether he would attack the victim again or someone else. *Id.* at 374-77. The primary purpose of the officers' inquiry, then, was to enable them to meet the present emergency by determining the level of danger to the victim, themselves, and the public. *Id.* Further, the questioning occurred informally, which failed to alert the victim that his statements were meant for prosecutorial ends. *Id.* at 377.

Likewise, Sergeant Jones' questions to the unidentified woman occurred before Henderson was definitively identified and captured.

Because Henderson's whereabouts were unknown, as well as the motivation for the attack—whether to simply kill people generally or the victims in particular—the emergency had not passed. Additionally, the questioning was informal. It occurred in a spur-of-the-moment fashion both at the entrance to the American Legion Hall and in a parking lot, as opposed to a formal interview at a police station. Thus, the Wisconsin Court of Appeals did not err in finding that the woman's statements were non-testimonial. Henderson's right to confront her in person at trial was not implicated.

Henderson's arguments to the contrary lack merit. His opening brief rests its analysis on the old test for the interaction between hearsay and the Confrontation Clause announced in *Ohio v. Roberts*. 448 U.S. 56, 66 (1980) ("[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."); (Docket #17 at 10-14). This analysis is misplaced; *Crawford* abrogated *Roberts*' approach some fourteen years ago. *Crawford*, 541 U.S. at 60-69. The distinction between testimonial and non-testimonial statements, announced in *Crawford* and developed in *Davis* and its progeny, now control in confrontation jurisprudence. The remainder of Henderson's opening brief takes issue with whether the woman's statements were properly admissible under various exceptions to the rule against hearsay. (Docket #17 at 9-11, 14-18). This is entirely

irrelevant given that the corresponding ground for relief has already been dismissed. (Docket #15 at 6-8).

Henderson's reply does no better. He cites *Crawford* therein, (Docket #19 at 4-5), but because he does so for the first time, the Court could treat the argument as waived, *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006). Even absent waiver, Henderson makes only a few conclusory gestures with respect to the *Crawford* approach. (Docket #19 at 4-5, 9-11). He does not attempt to argue how the woman's statements could be considered testimonial. Instead, he continues his focus on the immaterial issue of whether the woman's statements fell within a hearsay exception. *Id.* at 6-9. Ultimately, Henderson's reply is presented largely as a response to Respondents argument that admission of the woman's statements, even if erroneous, was a harmless error. *See, e.g., id.* at 7, 11. The Court has not reached that contention, however. This Court finds that the Wisconsin Court of Appeals committed no error at all, at least insofar as the standard of review which controls here.

**5.      CONCLUSION**

Henderson has not shown that the Wisconsin Court of Appeals unreasonably applied Supreme Court precedent in deciding whether his confrontation right was violated. Indeed, he has not even shown that its conclusion was wrong. Most importantly, Henderson has failed to demonstrate that no fairminded jurist could agree with the Wisconsin Court of Appeals' decision. *Jackson*, 569 U.S. at 508-09. The Court must, therefore, deny the fourth and final ground for relief in Henderson's petition and dismiss this action with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Henderson must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court discussed above, no reasonable jurists could debate whether Henderson's petition has merit because the Wisconsin Court of Appeals clearly and correctly applied controlling Supreme Court precedent. As a consequence, the Court is compelled to deny a certificate of appealability as to Henderson's petition.

Finally, the Court closes with some information about the actions that Henderson may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Ground Four of Petitioner's petition for a writ of *habeas corpus* (Docket #1 at 9) be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that Petitioner's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2018.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge